UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-20631-CIV-LENARD/WHITE

**HAROLD BROWN**,

    Plaintiff,

v.

**JORGE PASTRANA, et al.**,

    Defendants.

_____/

**ORDER ADOPTING IN PART REPORT AND RECOMMENDATION (D.E. 57) AND GRANTING DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT (D.E. 52)**

**THIS CAUSE** is before the Court on the Report and Recommendation of Magistrate Judge Patrick A. White ("Report," D.E. 57), issued on February 1, 2010. The Report recommends the Court grant Defendant Lieutenant Warren's ("Warren") Renewed Motion for Summary Judgment ("Motion," D.E. 52), filed on August 17, 2009.[1] On March 18, 2010, Plaintiff Harold Brown filed his objections to the Report ("Objections," D.E. 60). No response to the objections was filed. Having considered the Motion, Report, Objections, related pleadings, and the record, the Court finds as follows.

**I.**    **Background**[2]

---

[1] The Motion renews Defendant's Motion to Dismiss or in the Alternative Summary Judgment, filed on November 26, 2008. (See D.E. 27.)

[2] The following facts are undisputed unless otherwise noted.

At approximately 4:40 a.m. on the morning of April 19, 2006, Plaintiff, an inmate at the Federal Correctional Institution in Miami, Florida ("FCI-Miami"), fell while attempting to climb down a ladder attached to his bed. Plaintiff fell from the top bunk of a "three-tier bed," or approximately eight feet. Plaintiff's First Amended Complaint ("Complaint," D.E. 12), alleges he lost consciousness and sustained injuries to his head, back, and arm. Plaintiff alleges his injuries were so severe that he could not pick himself up from the floor.

Upon hearing him fall, Plaintiff's cell mates, Junior Brown[3] and another unnamed inmate, began to bang on the cell door in order to get the attention of corrections staff. Plaintiff alleges that a correctional officer responsible for the area, Unit Officer Irizarry, arrived at the cell unit at around 5 or 5:10 a.m. Plaintiff and Junior Brown informed Irizarry that Plaintiff had fallen, was in extreme pain, and could not move. Plaintiff also claims he informed Irizarry that he had lost feeling in his left leg and that he needed immediate medical assistance. According to Plaintiff, he was lying supine on the concrete floor unable to move.

Irizarry proceeded to contact his supervisor Warren using his handheld radio.[4] In his declaration, Plaintiff avers that he heard Irizarry contact Warren via the radio and that he recognized Warren's voice. Plaintiff then states that he heard Irizarry tell Warren, "I have an inmate who fell from the upper bed, he is lying on the floor, can't get up -- he needs medical assistance." (Pl. Decl. at ¶ 8, D.E. 55 at 21-22.) Plaintiff's declaration then states

---

[3]   Junior Brown is unrelated to Plaintiff.

[4]   Warren's declaration only mentions being called by Irizarry, but does not indicate whether Irizarry contacted him via radio initially.

that Warren directed Irizarry to call him and Irizarry left the cell.  (Id.)  According to Plaintiff, Irizarry returned ten minutes later.  When he returned, Irizarry told Plaintiff that "Lt. Warren said to go to sick call when it opens up."  (Id. at ¶ 9, D.E. 55 at 22.)  According to Plaintiff, Irizarry stated that he had informed Warren of Plaintiff's injuries and pain but that Warren did not care whether he needed emergency medical care.  (Id.)  Junior Brown's affidavit is somewhat more vague but states "after attempting to contact Lieutenant Warren, Lieutenant Warren told Officer Irrizari [sic] that nobody was at the hospital at the time."  (Junior Brown Decl. at ¶ 7, D.E. 55 at 37-38.)

Warren's declaration provides a different account of events.  According to Warren, he recalls receiving Irizarry's call "some time after 5:30 a.m."  (Def. Decl. at ¶ 4, D.E. 52-2 at 2.)  Warren states that Irizarry informed him that an inmate had claimed to have fallen from the top bunk bed.  (Id.)  According to Warren, when he receives such a call he "as a matter of course" asks the unit officer for sufficient information such as the inmate's condition and whether they need medical attention.  (Id.)  In this case, Irizarry "did not advise [Warren] that the inmate had any injuries" and thus Warren decided Plaintiff could wait until medical staff arrived at the facility shortly.  (Id.)  Warren's version of events is corroborated in part by the log book for the facility's housing unit.  The log book indicates that Plaintiff complained of his fall at 5:30 and Irizarry informed Plaintiff to report to sick call.  (Log Book, D.E. 52-2 at 5.)  Warren further states that, "[p]rior to leaving the institution that morning, I informed the oncoming Physician's Assistant of the incident and the inmate's

3

need to be seen." (Def. Decl. at ¶ 6, D.E. 52-2 at 3.)

At approximately 6 a.m., there was a shift change at FCI-Miami. At that time, Irizarry's replacement, Officer Paicely, observed Plaintiff lying on the ground. Junior Brown states that he informed Officer Paicely that Plaintiff had fallen and needed help. (Junior Brown Decl. at ¶ 9, D.E. 55 at 38.) Plaintiff's declaration states that Paicely subsequently contacted his supervisor, Lieutenant Rodriguez, who arrived on the scene and determined Plaintiff needed immediate medical assistance. (Pl. Decl. at ¶ 10, D.E. 55 at 22.) The housing unit's log book indicates Officer Paicely notified the facility's physician's assistant, Rosa Alminaque, at 6:15 a.m. (Log Book, D.E. 52-2 at 6; Pl. Decl. at ¶ 10-11, D.E. 55 at 22.) Alminaque's declaration indicates that she arrived at the housing unit at approximately 6:30 a.m. Plaintiff was escorted on a stretcher to the facility's infirmary at approximately 6:42 a.m. (Log Book, D.E. 52-2 at 6.) The medical staff at FCI-Miami assessed Plaintiff for injuries to his back and left elbow. (Alminaque Decl. at ¶ 4-5, D.E. 27-3 at 3.) The medical staff also conducted an x-ray examination, which preliminarily indicated no fractures. (Id.) Plaintiff was subsequently prescribed ibuprofen for his pain.[5] (Id.)

Plaintiff's Complaint alleges Warren acted deliberately indifferent to his medical needs by failing to provide immediate medical attention despite being informed of his pain

---

[5] Plaintiff alleges he suffered a "chipped" elbow from the fall, though medical records submitted as part of Plaintiff's pre-trial statement indicate x-rays of his left elbow revealed a "spur with no sign of fracture" and that this spur also appeared in x-rays as far back as August 29, 2001. (See Ex. 6 to Plaintiff's Pre-Trial Statement, D.E. 48.)

and injuries resulting from the fall.[6] Warren's Motion seeks summary judgment on Plaintiff's deliberate indifference claim based upon a lack of evidence and on qualified immunity grounds.[7]

## II.    Magistrate Judge's Report and Objections

The Report concludes Warren is entitled to summary judgment on Plaintiff's deliberate indifference claim. First, the Report finds that Plaintiff fails to rebut Warren's declaration as to whether or not Warren was aware of Plaintiff's injuries. Because Plaintiff was not present during the phone call between Irizarry and Warren, the Magistrate Judge concluded there is no proof Warren knew of Plaintiff's injuries. The Report also notes that there is no declaration or statement in the record from Irizarry supporting Plaintiff's version of what was said. Accordingly, the Report finds "[t]he decision by Warren was made because of a lack of information indicating to him that Brown was injured and needed urgent medical care." (Report at 23.) Furthermore, the Report notes that regardless of whether Irizarry informed Warren of Plaintiff's fall at 5:10 a.m. or 5:30 a.m., the medical staff at FCI-Miami evaluated him shortly thereafter. Finally, the Report notes Plaintiff failed to submit

---

[6] Plaintiff brings this action pursuant to Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971). The Complaint originally named two other defendants, Warden Jorge Pastrana and the Federal Bureau of Prisons. Those defendants and additional claims were dismissed. As a result, all that remains pending in this lawsuit is Plaintiff's claim of deliberate indifference against Warren.

[7] Warren also sought summary judgment on the grounds that Plaintiff failed to administratively exhaust his claim pursuant to the Prison Litigation Reform Act of 1995. The Report thoroughly examines the record and concludes Plaintiff's claim was in fact exhausted. As neither Plaintiff nor Warren filed any objections to the Report, the Court **ADOPTS** the Report's analysis of the exhaustion aspect of Plaintiff's claim and declines to further address it herein.

medical records as evidence of his injuries and failed to submit any evidence that his injuries were exacerbated by any delay. As a result, the Report concludes Plaintiff fails to meet the subjective element of an Eighth Amendment deliberate indifference claim and accordingly Warren is also entitled to qualified immunity as the facts do not raise a constitutional violation.

Plaintiff's Objections contend he has offered sufficient facts to create a genuine issue of material fact as to whether Warren knew of Plaintiff's injuries and need for medical attention. Plaintiff also argues the additional pain he suffered because of the delay constitutes sufficient harm for a deliberate indifference claim.

**III.     Standard of Review**

Upon receipt of the Report and the objections of the parties, the Court must now "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id. In making its determination, the district court is given discretion and "is generally free to employ the magistrate judge's findings to the extent that it sees fit." Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1245 (11th Cir. 2007).

On a motion for summary judgment, the Court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Summary judgment can be entered on a claim

only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248; see also Barfield v. Brierton, 883 F.2d 923, 933 (11th Cir. 1989).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions of file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions,

7

answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324; see also FED. R. CIV. P. 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Id. at 587. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Id.

## IV. Discussion

### A. Deliberate Indifference

"Deliberate indifference to a prisoner's serious medical needs is a violation of the Eighth Amendment." Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). "To prevail on a deliberate indifference to serious medical need claim, Plaintiffs must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009) (citing Goebert, 510 F.3d at 1326). A prison official "who delays necessary treatment for non-medical reasons may exhibit deliberate indifference." Farrow v. West, 320 F.3d 1235, 1246 (11th Cir. 2003); see also Brown, 894 F.2d at 1538 ("an unexplained delay of hours in treating a serious injury states a prima facie case of deliberate indifference").

### 1. Serious Medical Need

The first component of the analysis has been described as an "objective" evaluation of whether the plaintiff has stated a serious medical need. See Goebert, 510 F.3d at 1326. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hill v. Dekalb Regional Youth Detention Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994), overruled in part on other grounds by Hope v. Pelzer, 536 U.S. 730, 739 (2002). Accordingly, a "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. at 1187. "Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem."[8][9] Id.

---

[8] The Eleventh Circuit has found serious medical needs present in cases where a prisoner suffered a six-hour delay in treatment for a broken foot, Brown v. Hughes, 894 F.2d 1533, 1538 (11th Cir. 1990), where a prisoner sustained a one and a half inch cut above his eye but was delayed treatment for two and a half hours, Aldridge v. Montgomery, 753 F.2d 970, 972 (11th Cir. 1985), and where a prisoner failed to receive proper dental treatment for approximately eighteen months, Farrow v. West, 320 F.3d 1235, 1244-45 (11th Cir. 2003).

[9] Alternatively, a serious medical need can be demonstrated through evidence that a delay in treatment worsened a medical condition. See Mann, 588 F.3d at 1307; Hill, 40 F.3d at 1188 ("The 'seriousness' of an inmate's medical needs also may be decided by reference to the *effect* of delay in treatment.") Plaintiff does not allege that the delay worsened his medical condition and there are no facts in the record to support such a claim.

The Court finds that Plaintiff has stated a sufficiently serious medical need to survive summary judgment on his deliberate indifference claim. Plaintiff's allegations assert a medical need so obvious that even a lay person would easily recognize the necessity for a doctor's attention. The undisputed facts in this case are that Plaintiff fell from the top tier of his cell unit's bunk bed, or approximately eight feet, to the concrete floor below. A fall from that height to a concrete floor presents very obvious medical needs. In fact, a cursory review of other deliberate indifference cases revealed several cases in which inmates had sustained broken necks or died due to internal bleeding after falling from their prison bunks. See Loosier v. Unknown Medical Doctor, 2010 U.S. App. LEXIS 11040 (5th Cir. June 1, 2010); Briggs v. Oakland County, 213 Fed. Appx. 378 (6th Cir. 2007). Plaintiff has stated that he lost consciousness but that assertion is contradicted by Alminaque's declaration and elsewhere in the record. Plaintiff also alleges he suffered such severe back injuries that he could not get up off the ground and was in extreme pain. Although the extent of any delay in medical treatment is disputed, viewing the facts in a light most favorable to Plaintiff, he was laying on the floor in pain and unable to get up from approximately 5:10 a.m., the time he alerted Irizarry to his injuries, until approximately 6:30 a.m., when the medical staff first came to see him. In other words, there was a delay of one hour and twenty minutes between the time he first alerted the correctional staff and when he first received medical treatment. The record also indicates that when he finally received medical attention, Plaintiff was removed from his cell and taken to the infirmary on a stretcher. While ultimately the medical

staff's x-rays were negative as to any broken bones and Plaintiff was ultimately prescribed only ibuprofen, the Court finds the circumstances surrounding Plaintiff's injuries and complaints at the time of the incident constitute a sufficiently serious medical need to satisfy the objective component of the deliberate indifference analysis.

### 2.     Subjective Analysis

The second or "subjective" component of the analysis requires that the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, the plaintiff must prove "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." Goebert, 510 F.3d at 1327. Knowledge of the asserted serious needs or circumstances is "essential" to a finding of deliberate indifference. Hill, 40 F.3d at 1191. Nevertheless, "[w]hether a particular defendant has subjective knowledge of the risk of serious harm is a question of fact 'subject to demonstration in the usual ways, including reference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" Id. (quoting Farmer, 511 U.S. at 842); see e.g., Brown, 894 F.2d at 1539 (finding a genuine issue of material fact existed based upon conflicting affidavits as to whether a defendant knew of plaintiff's broken foot); Farrow, 320 F.3d at 1246-47 ("substantial and inordinate delay in treatment raises a jury question as to

[the defendant's] deliberate indifference towards [plaintiff's] serious medical need"); Campbell v. Sikes, 169 F.3d 1353, 1364 (11th Cir. 1999) ("since a finding of deliberate indifference requires a finding of the defendant's subjective awareness of the relevant risk, a genuine issue of material fact exists only if the record contains evidence, albeit circumstantial, of such subjective awareness") (internal citations omitted); Gary v. Modena, 2006 WL 3741364 at *12 (11th Cir. 2006) (question of whether a prison official had subjective knowledge of a substantial risk of harm is a material fact that may involve credibility determinations for the jury).

The Court finds a genuine issue of material fact exists as to whether Warren was aware of Plaintiff's injuries and need for medical care. Whether or not Warren had subjective knowledge of Plaintiff's condition is a question of fact. Plaintiff's declaration states that Irizarry told Warren, in his presence, that Plaintiff had fallen from the top bunk, could not get off the ground, and needed medical assistance. Warren disputes that he was told Plaintiff needed medical attention. Rather, Warren claims Irizarry informed him over the phone that Plaintiff was not injured. As the Magistrate Judge noted, Irizarry did not submit an affidavit and there is no other evidence as to what transpired during the phone call between Irizarry and Warren. As it stands, the record contains two competing declarations that differ significantly as to a material fact. Although the Report based its finding on the lack of evidence as to what Irizarry told Warren over the phone, Plaintiff has alleged sufficient facts such that a reasonable jury could find Warren was informed of Plaintiff's

12

need for medical assistance even prior to the phone call. Warren's subjective awareness of Plaintiff's condition is further supported by circumstantial evidence. First, both Plaintiff's and Junior Brown's affidavits indicate Warren's basis for delaying medical treatment may have been due to the fact that the facility's staff had not yet arrived but was due to arrive shortly. Second, Warren himself indicates that before he left the institution he informed the incoming medical staff that Plaintiff needed to be seen. A belief that Plaintiff was able to transport himself to sick call later that morning may not necessarily comport with his later advising medical staff to go and visit Plaintiff's cell. Viewing the facts in the light most favorable to Plaintiff, it appears there are sufficient facts such that a reasonable jury could find circumstantial evidence of Warren's awareness. Although the Magistrate Judge may ultimately be correct that, "[t]he decision by Warren was made because of lack of information indicating to him that Brown was injured and needed urgent medical care," that determination is ultimately for the factfinder based on the record presented thus far.

      The Report additionally errs in construing several facts in a manner inconsistent with Plaintiff's proffered facts. Although noting a factual dispute as to when exactly Warren was called, the Report measures the amount of delay up until 6 a.m., or when the medical staff arrived at the facility. Nevertheless, Alminaque's affidavit provides that she arrived at the facility's housing unit at 6:30 a.m. to evaluate Plaintiff. Viewing the facts in a light most favorable to Plaintiff, he lay on the ground for approximately two hours before he was seen by medical staff and there was a delay of approximately 1 hour and 20 minutes between

when he informed Irizarry and when he was evaluated for treatment. Although the jury may ultimately conclude the delay was de minimis, the Eleventh Circuit has recognized that an inmate may state a serious medical need based on a delay in treatment of hours or the additional pain caused by a defendant's deliberately indifferent delay. See Brown, 894 F.2d at at38 ("Deliberately inflicted pain, as with an electric cattle prod, does not become unimportant and unactionable under the eighth amendment simply because the pain produced is only momentary. Even if we were to recognize as de minimus delays of a few seconds or minutes, a deliberate delay on the order of hours in providing care for a serious and painful broken foot is sufficient to state a constitutional claim."); McElligott v. Foley, 182 F.3d 1248, 1257 (11th Cir. 1999) ("A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care, delaying care, or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness").

### 3. Causation

The Court finds Plaintiff has sufficiently alleged that Warren's deliberate indifference caused him to suffer additional pain. The Report notes that Plaintiff does not submit medical evidence proving that any of his injuries were exacerbated by a delay in treatment. Nevertheless, the essence of Plaintiff's Complaint is not that his back and elbow injuries were exacerbated by Warren's deliberately indifferent delay. Rather, Plaintiff asserts the deliberate indifference caused him to lay for hours in extreme pain. Courts have recognized

that the intentional or wanton infliction of additional pain may constitute an Eighth Amendment violation. Thus, Plaintiff sufficiently alleges facts demonstrating causation.

### B. Qualified Immunity

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A defendant asserting qualified immunity must first demonstrate the allegedly wrongful act or omission occurred while he or she was engaged in a discretionary duty. Goebert, 510 F.3d at 1329 (citing Mercado v. City of Orlando, 407 F.3d 1152, 1156 (11th Cir. 2005)). Next, "[o]nce a constitutional violation is found (or it is determined that whether there was one depends on disputed factual issues) and the discretionary element is established, the question is whether the official's alleged acts or omissions 'violate clearly established statutory or constitutional rights.'" Goebert, 510 F.3d at 1329. In order for a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violated that right." Lowe v. Aldridge, 958 F.2d 1565, 1570 (11th Cir. 1992). The Eleventh Circuit has previously suggested in Hill that "'[a] finding of deliberate indifference necessarily precludes a finding of qualified immunity; prison officials who *deliberately* ignore the serious medical needs of inmates cannot claim that it was not apparent to a reasonable person that such actions violated the law.'" 40 F.3d at 1186 (quoting Hamilton v. Endell, 981 F.2d

1062, 1066 (9th Cir. 1992)).

First, Warren's actions in determining when and whether medical care was necessary are inherently discretionary in nature. See Dixon v.Gulley, 1998 U.S. Dist. LEXIS 18136 at *18 (S.D. Ala. 1998) ("The decision to seek medical treatment for a prisoner is a discretionary function for purposes of qualified immunity"). Second, having found the merits of Plaintiff's deliberate indifference claim hinge on disputed issues of material fact, the Court must examine whether Warren's actions violate clearly established constitutional rights.

The Eleventh Circuit recognizes three sources of law that provide a government official with notice of constitutional rights: (1) specific constitutional provisions; (2) principles of law enunciated in relevant decisions; and (3) factually similar cases decided by state and federal courts in the same jurisdiction. Goebert, 510 F.3d at 1330. "The Supreme Court's decision in Estelle established that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment." Id. (internal citations omitted).  The Eleventh Circuit has also previously held that a prison official acts with deliberate indifference by intentionally delaying medical treatment for an inmate who has a life-threatening condition or an urgent medical condition that would be exacerbated by delay. Id. (quoting Lancaster v. Monroe County, Ala., 116 F.3d 1419 (11th Cir. 1997)).  Nevertheless, "[t]he more general the statement of law is that puts the official on notice, the more egregious the violation must be before we will find that the official is not entitled to qualified immunity." Id.  Moreover,

16

cases involving deliberate indifference claims based upon a delay of medical treatment require a "highly fact-specific" inquiry. Id. (quoting Bozeman v. Orum, 422 F.3d 1265, 1274 (11th Cir. 2005)).

The question then is whether a reasonable officer would have known that failing to seek immediate medical treatment for an inmate with Plaintiff's alleged injuries constitutes deliberate indifference. To determine whether Warren's actions were objectively reasonable, the Court must look at the information known to him, viewed in a light most favorable to Plaintiff. See Harris v. Coweta County, 21 F.3d 388, 390-91 (11th Cir. 1994) (citing Swint v. City of Wadley, 5 F.3d 1435, 1438 (11th Cir. 1993), modified on reh'g on other grounds, 11 F.3d 1030 (11th Cir. 1994)). The only record evidence of what information was known to Warren is provided in Plaintiff's declaration and Warren's declaration. Plaintiff's declaration states that he heard Irizarry tell Warren, "I have an inmate who fell from the upper bed, he is lying on the floor, can't get up -- he needs medical assistance." (Pl. Decl. at ¶ 8, D.E. 55 at 21-22.) It is undisputed that a phone conversation then took place between Irizarry and Warren. Warren denies he was advised that Plaintiff needed medical attention. Viewing the facts in the record in the light most favorable to Plaintiff, at most, Warren knew that Plaintiff had fallen and Irizarry initially thought he needed medical assistance. Warren states that he inquired of Irizarry the status of Plaintiff's conditions and whether medical attention was needed, and that Irizarry informed Warren that Plaintiff did not have any injuries. Based upon the facts in the record, viewed in a light most favorable to Plaintiff, a

17

reasonable government official could have believed that immediate medical assistance was not necessary and treatment by the medical staff approximately one hour later would comport with Plaintiff's constitutional rights. In other words, while Plaintiff has demonstrated factual issues exist as to what exactly Warren knew and whether he acted deliberately indifferent to Plaintiff's needs, he has failed to set forth enough facts such that a reasonable officer (viewing all of the facts in the record in a light favorable to Plaintiff) would have believed his conduct was unlawful. The record evidence establishes, at best, that: (1) Warren's subordinate initially advised Warren that medical attention was needed; (2) Warren subsequently spoke to that officer over the phone; and (3) Warren then determined Plaintiff could wait until medical staff arrived at the facility approximately a half hour to an hour later. In essence, the facts in the record do not demonstrate an egregious violation or shed much light on what Warren knew, such that an objectively reasonable officer would believe his conduct unlawful. Accordingly, consistent with this Order, it is hereby **ORDERED AND ADJUDGED** that:

1. The Report and Recommendation of the Magistrate Judge (D.E. 57), issued on February 1, 2010, is **ADOPTED in part** with regard to its analysis of whether Plaintiff's claim was properly exhausted administratively and **OVERRULED in part** with regard to its analysis of the merits of Plaintiff's deliberate indifference claim and Defendant's defense of qualified immunity;

2. Defendant's Warren's Renewed Motion for Summary Judgment (D.E. 52),

       filed on August 17, 2009, is **GRANTED** with regard to Defendant's assertion of qualified immunity and summary judgment is hereby **ENTERED** in favor of Defendant on Plaintiff's claim;

3.     All other pending motions are **DENIED AS MOOT**;

4.     This case is now **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 15th day of March, 2011.

                                              _/s/ Joan A. Lenard_
                                       **JOAN A. LENARD**
                                       **UNITED STATES DISTRICT JUDGE**